Chief Justice Mjihshall
delivered the opinion of the Court.
Under the will of Lanham, the slave, King,- devised-to his wife during life or widowhood, was, even in the event of her marriage, to be retained by her until the youngest child of the testator “may get its education,” provided she should choose to keep the children and give them a common English education, and “when the youngest child may get its education,” the boy was to be hired out for the benefit of the children until the *273 youngest arrives at full age or marries, when he is to be sold and the proceeds distributed among the testator’s children.
The testator directed a slave to be hired out by his widow until his youngest child arrived at the age of 21, and then to be p^ce ¡^divided (,utais pointed jno one duty. Held that lheTxecutor.P°7 Monroe, ■ 304.)
The widow having possession of the boy under the will, and having her children with her, after some years married the plaintiff, O’Neal, and still kept the boy, as allowed by the will, until the elder children arriving at full age or marrying left her, and the youngest a son had attained the age of about twenty years. While this son was still an infant, Beall, the executor of Lanham took the slave, King, from the possession of O’Neal and wife, who thereupon brought this action of replevin against him for the taking, &c. The defendant in his second plea set up the foregoing facts, in substance, and averred further that the plaintiffs had had reasonable time to educate the testator’s youngest child; as provided for in the will, and had in fact so educated him before the seizure by the executor. A demurrer to this plea was overruled, and the plaintiffs replied denying that the youngest child had got the education , provided for by the will; and averring further that they held the possession of the slave by the consent and direction of the adult children of the testator and under ihe authority of the plaintiff O’Neal; as guardian of the youngest child. This replication was adjudged bad •on demurrer, and the plaintiffs having failed to make further answer to the plea, a judgment in bar was rendered against them.
There is no doubt that the testator contemplated an interval between the time when the youngest child should have received an education and the arrival at age or marriage of the same child, during which interval the slave was to be hired out for the benefit of all
his children, and at its close, to be sold also for their benefit. And although the-executor is not expressly directed to do these acts; yet as no other person is named tor the purpose, the power devolved upon him in virtue of his appointment as executor. This was expressly decided in Dean’s heirs vs Dean’s executors, (7 Monroe, 304,) and in other cases.
But a court of equity can alone give the executor ihe possession of the slave, it it be denied to him — the widow being a trustee.
But according to the case just cited, (7 Monroe 310,): the executor had a mere naked power to hire and sell without the legal title, or a legal right to the possession- or any legal remedy for obtaining it, though necessary for the exercise of his power. In that case, the event; upon which the power of sale was to be exercised was the death of the testator’s widow, which had actually happened, and there was, therefore, no question that the power might then be exercised according to the will. Yet the Court in that state of case say, (page 310,) “If there can be any possible means by which he can recover the possession, it must unquestionably be by a suit in equity.” Of course this merely equitable right to the possession could not have availed him in a Court- of Law, as a justification for forcibly taking the slaves which he was empowered to sell.
But the circumstances of the present case operate' much more strongly against such a defence and in favor of the position that the only remedy is in equity. For first, the termination of the widow’s right upon which the power of the executor to hire the slave depends, is not ascertained by any physical event, nor by mere lapse of time, but depends upon a fact or contingency which may be accelerated or postponed by circumstances ; and the time of its happening, though expected to occur before the time when the slave is to be sold, may, without a violation of the will, be in fact postponed, so that there shall be no room for the power of hiring, and, therefore, not even an equitable right in the executor to have the possession for that purpose. And, secondly, the possession of the slave was permi tted by the will to remain with the widow after her second marriage to enable her to perform the trust of maintaining and educating the children, and until that trust should be performed by the education of the youngest child. It was, doubtless, the duty of the widow, as trustee, to perform the trust in reasonable time according to the circumstances. But it does not. follow, and we do not admit that either the executor. *275 ui a Court of Law has the right to take cognizance of her conduct and duties or rights as trustee, and to deprive her of her possession and office upon-their judgment of her 'want of reasonable diligence in the performance of the trust. These matters pertain especially to a Court of Equity, which has not only for the most part exclusive jurisdiction over trusts, but which alone can coerce the trustee to a performance of the trust, or ensure its performance by another. If a Court of Law deprives the trustee of possession for neglecting the performance of the trust, it leaves the trust unperformed and unprovided for.
The replication, it will be observed, traverses the averment that the youngest child had been in fact educated, <fcc., before the seizure of the slave-.by the executor, but does not traverse the averment that a reasonable time for his education had elapsed. And we presume it was for failing to traverse this averment that the replication was adjudged bad, while either of the two averments was deemed by the.Circuit Court a sufficient defence to the action. But if these averments can be sepai’ated and if either of them could be deemed material and sufficient, it would surely be that one which shows that the trust was accomplished, and, therefore, that the power of hiring by the executor had attached, and not the one which merely showed that the trust might and ought to have been accomplished, but leaves it doubtful whether the power of the executor has attached, or whether the trust being unaccomplished should be enforced. If the averment that the. youngest child had in fact been educated were sufficient and the plea therefore good, then the replication traversing the material averment was also good, and should have been so adjudged on the demurrer. For if the affirmative matter in the replication be regarded as immaterial, it certainly does not injure the case of the plaintiff, nor vitiate the substantial answer to the plea. And if it be regarded as of itself presenting a sufficient answer, and thus making the plea double, this objection is unavailable on general demurrer, and the affirm *276 ative matter should have been answered. Even in thi# view of the case, therefore, the demurrer to the replication should have been .overruled.
If a jilea be insufficient a demurrer to the replication sho’d be overruled’ on account of the insufficiency of the plea.
By the practice in Kentucky, a party whose demurrer is overruled may withdraw it and plead any matter ■which he might have plead at first. So he should have the same privilege upon the return of a case from this Court, and the like practice should govern in respect io other subsequent pleadings.
But for the reasons before given and the authority above cited, we are of opinion that the plea is wholly insufficient to bar the action, because it does not show a legal right in the defendant, as executor, to take the slave out of the possession of the plaintiff at his own will. It follows that the demurrer to the plea having been withdrawn, the demurrer to the replication, should have been overruled on account of the insufficiency of the plea which in its present form requires no answer.
But we are also of opinion that the Court erred in sustaining the demurrer to the defendant’s first plea, which averred the taking to have been with the cony sent of the plaintiff, which is to be understood as embracing and meaning both plaintiffs, and is, until answered, a bar to the action. The demurrer to it having been decided in favor of the plaintiff, he had no opportunity of afterwards replying. And under the practice in this State which allows a party, at his own option, to withdraw his demurrer if decided against him, and to plead any matter of fact which he might in the first iny stance have pleaded, he should be allowed the same privilege on the return of the cause to the Circuit Court, as would have been the case if a judgment against a defendant upon a demurrer to his plea were' reversed by this Court.
With respect to the affirmative matter contained in replication to the second plea, we deem it only necessary to say in the present attitude of the case, that as the executor claims no right in or power over the slave, exy cept under the direction of the will, that he shall be hired out and afterwards sold for the benefit of all of the testator’s children, they being exclusively entitled to the proceeds, may, at their election, take and control the slave himself when they are competent to make an election. We presume, however, that this part of the pase cannot again come in question. And as to the legal title to the slave, as it was not in the executor, it is *277 immaterial whether it was in the widow after her ser oond marriage, or in the heirs to whom it descended, subject to the devise to her and to the power given to the executor.
Rountree fy Fogle and Ben. Hardin far plaintiffs; Shuck and C. A. Wickliffe for defendant.
Wherefore, the judgment is reversed and the cause remanded with directions to overrule the defendant’s demurrer to the replication to the second plea, on account of the insufficiency and immateriality of that plea, and to overrule the plaintiffs’ demurrer to the defendant’s first plea, and for further proceedings not inconsistent with this opinion.